Robert A. Sparks
1552 Noble Street
Fairbanks, Alaska 99701
907-451-0875 voice
907-451-9385 fax
sparkslawoffice@yahoo.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| DNBD, INC. | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| WELLS FARGO BANK NATIONAL ASSOCIATION | ) ) ) |
| Defendant | ) ) |

CASE NO.

**COMPLAINT**

COMES NOW Plaintiff DNBD, Inc., by and through its attorney, Robert A. Sparks, the Law Office of Robert A. Sparks, and for its Complaint against the Defendant Wells Fargo Bank National Association, a national banking association, and alleges and states as follows:

1. Plaintiff, DNBD, Inc. (hereinafter "DNBD"), is a small, closely held resident Alaska corporation, that has its principal place of business in Healy, Alaska, and is fully qualified to bring and maintain this action.

2. Defendant Wells Fargo Bank National Association is a national banking association that on information and belief is a citizen of the State of South Dakota, doing business in the State of Alaska as a foreign entity.

3. Plaintiff DNBD, a small closely held Alaska corporation,

Page 1

approached Defendant Wells-Fargo regarding refinancing a commercial loan in 2005. Plaintiff DNBD had a pre-existing banking relationship with Wells-Fargo.

4. Defendant Wells-Fargo represented to Plaintiff DNBD that Wells-Fargo would only extend Plaintiff DNBD the commercial loan in the amount requested, if DNBD agreed to enter into a highly complicated interest rate swap contract with the bank.

5. Plaintiff DNBD relied on Defendant Wells-Fargo's superior knowledge and expertise when it agreed to enter into the highly complicated interest rate swap loan contract with Defendant Well's Fargo.

6. Defendant Wells-Fargo was aware or reasonable should have been aware that Plaintiff DNBD, its agents, employees and shareholders were incapable of accurately evaluating the risks presented to Plaintiff DNBD from participation in the interest swap arrangement proposed by Defendant Wells-Fargo.

7. Defendant Wells-Fargo was aware or reasonable should have been aware that Plaintiff DNBD, its agents, employees and shareholders were relying on Defendant Wells-Fargo's superior knowledge and expertise regarding entering into the interest rate swap arrangement, because Wells-Fargo was well aware of the extreme complexity presented by the interest rate swap arrangement proposed to Plaintiff DNBD and Defendant Wells-Fargo was well aware or reasonably should have been aware that the agents, officers, employees and shareholders of Plaintiff had insufficient training, education or financial experience and were

incapable of accurately evaluating the risks to Plaintiff presented by the Defendant's interest rate swap arrangement and "Interest Rate Master Agreement."

8. Defendant Wells-Fargo had vastly superior knowledge and was well aware or reasonably should have been aware that Plaintiff DNBD, its employees, officers and shareholders would be unable to understand the extremely complicated terms of the interest rate swap arrangement and "Interest Rate Master Agreement" including but not limited to failing to appreciate or understand that the future cost to Plaintiff DNBD to continue with the arrangement or to terminate the interest rate swap agreement prematurely could be prohibitively expensive and could exceed $100,000 or more.

9. Defendant Wells-Fargo failed to disclose these substantial risks to the Plaintiff DNBD, because Defendant knew that no reasonable person or business would have agreed to assume the unreasonable and potentially unlimited liability presented by the interest rate swap agreement and the "Interest Rate Master Agreement".

10. The terms of the interest rate swap agreement contained in the "Interest Rate Master Agreement" entered into between the parties on or about June 10, 2005, was entered into connection with the commercial loan entered into between Plaintiff DNBD and Defendant Wells Fargo on August 1, 2005.

11. The 2008 financial crisis caused the interest rate swap arrangement contained in the "Interest Rate Master Agreement" to

generate huge losses for Plaintiff DNBD instead of gains and led to the termination of the interest rate swap agreement contained in the "Interest Rate Master Agreement" on or about April 115, 2009.

12. Defendant Wells Fargo represented to Plaintiff DNBD, its employees officers and shareholders at the time of the termination of the interest rate swap arrangement that Defendant would waive or substantially reduce the termination fee.

13. Defendant Wells Fargo failed to send timely statements to the Plaintiff DNBD informing it of the outstanding balance of the termination fee for the interest rate swap from approximately April 2009 through March 2016, when Defendant Wells Fargo demanded that Plaintiff DNBD pay $163,600 for termination fees for the interest rate swap arrangement contained in the "Interest Rate Master Agreement" at the payoff of the commercial loan entered into by Plaintiff DNBD in 2005.

14. Defendant Wells Fargo failed to timely or reasonably inform Plaintiff DNBD that Wells Fargo intended to enforce the terms of the "Interest Rate Master Agreement" by making Plaintiff DNBD pay the termination fee for ending the interest rate swap arrangement, between 2009 and March 2016.

15. Defendant Wells Fargo breached the duty of good faith and fair dealing when it failed to disclose to Plaintiff DNBD the substantial risks to Plaintiff DNBD that were known or reasonably should have been known by Defendant Wells Fargo by Plaintiff DNBD entering into the highly complicated interest rate swap

Page 4

arrangement with Defendant Wells Fargo, including that fact that if the interest rate swap arrangement began losing money, that it could be prohibitively expensive for Plaintiff DNBD to remain in the swap arrangement or to terminate the arrangement early and that the costs of early termination could exceed $100,000 or more.

16. Defendant Wells Fargo should be estopped from relying on the statute of limitations or latches in this case, due to its failure to fully disclose the risks presented by the interest rate swap arrangement and "Interest Rate Master Agreement" to Plaintiff DNBD, due to Defendant's actions in failing to provide Plaintiff with timely statements showing the balance of the termination fee allegedly due Defendant for Plaintiffs early termination of the interest rate swap arrangement and Defendant's failure to reasonably inform Plaintiff DNBD from 2009 through 2016 that the Defendant Wells Fargo intended to enforce the terms of the "Interest Rate Master Agreement" by requiring Plaintiff DNBD to pay $163,600 in Swap termination fees at the time Plaintiff DNBD paid off the 2005 business loan.

## COUNT I
### (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

17. Plaintiff DNBD reaffirms and realleges all prior allegations and further complains against the Defendant Wells Fargo as follows:

18. The actions of Defendant Wells Fargo under the circumstances previously described, including Defendant's failure to adequately disclose to Plaintiff DNBD the substantial

Page 5

risks that Wells Fargo was well aware the interest rate swap arrangement presented to Plaintiff DNBD, constitutes breach of the duty of good faith and fair dealing owed to Plaintiff DNBD.

19. Defendant Wells Fargo's breach of contract has proximately caused Plaintiff DNBD to suffer damages in the amount of at least $163,600.

**COUNT II**
**(BREACH OF FIDUCIARY DUTY)**

20. Plaintiff DNBD hereby realleges and reaffirms all prior allegations and further complains against the Defendant Wells Fargo as follows:

21. Defendant Wells Fargo assumed fiduciary duties with regard to offering a highly complicated financial product, the swap loan arrangement, to an unsophisticated closely held small business corporation whose employees, officers, agents and shareholders had no reasonable ability to understand or evaluate the risks presented to Plaintiff DNBD by the swap loan arrangement and "Interest Rate Master Agreement" proposed by Defendant Wells Fargo.

22. Defendant Wells Fargo's actions in this case represent breach of fiduciary duties, including duties of full disclosure and self-dealing, by allowing Plaintiff DNBD to enter into a highly complex financial transaction that the Defendant, its agents and employees, knew or reasonably should have known were far beyond the comprehension level of any officer, agent, employee or shareholder of Plaintiff DNBD.

23. As a result of Defendant Wells Fargo's breach of

Page 6

fiduciary duty, Plaintiff DNBD has suffered damages in the amount of $163,600 for the termination fees charged to Plaintiff by Defendant Wells Fargo in March 2016.

WHEREFORE, Plaintiff DNBD prays for judgment from this court as follows:

1. For judgment against the Defendant Wells Fargo Bank National Association in the amount of at least $163,600 for breach of contract and breach of fiduciary duty.

2. For such other and further relief as the court deems just and equitable under the circumstances.

3. For Plaintiff DNBD's reasonable actual attorney's fees under the terms of the parties contract.

DATED this 26th day of February, 2017 at Fairbanks, Alaska.

THE LAW OFFICES OF ROBERT A. SPARKS

Robert A. Sparks /s/
Robert A. Sparks
Attorney for Plaintiff
AK Bar Membership No. 8611139
1552 Noble Street
Fairbanks, Alaska 99701
Phone: 907-451-0875
Fax: 907-451-9385
sparkslawoffice@yahoo.com